# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BRUCE POWELL, | |
| Plaintiff, | Case No. 17-cv-5156 |
| v. | |
| CITY OF CHICAGO, RONALD WATTS, PHILLIP CLINE, DEBRA KIRBY, DOUGLAS NICHOLS, and MANUEL LEANO, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce Powell sued the City of Chicago and five Chicago Police Department (CPD) officers under 28 U.S.C. § 1983. He alleges multiple constitutional violations stemming from a 2009 arrest. [1]. Defendants moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [30]. For the reasons explained below, this Court denies Defendants' motion.

## I.     The Complaint's Allegations

On July 17, 2009, Defendant Officers Douglas Nichols and Manuel Leano approached Plaintiff outside the Ida B. Wells Homes in Chicago and arrested him without an arrest warrant or probable cause. [1] ¶¶ 16, 17, 19. Leano and Nichols did not search Plaintiff when they confronted him on the street. *Id.* ¶ 17. After taking Plaintiff to a police station, however, Nichols and Leano subjected him to intense and futile body-cavity searches. *Id.* ¶¶ 18, 20. Other Chicago police officers

1

later took Plaintiff to a hospital to treat injuries that the searches caused. *Id.* ¶ 22. Plaintiff remained in police custody during and after the hospital visit. *Id.* ¶ 31.

After arresting Plaintiff, Nichols and Leano conspired with Defendant Sergeant Ronald Watts, their supervisor, to fabricate a police report stating that they arrested Plaintiff because they saw him discard a clear plastic bag containing drugs. *Id.* ¶¶ 23, 24. Watts formally approved the false report—and potentially a series of related false reports—in full knowledge of the falsehoods. *Id.* ¶ 25. Eventually, one or more Defendants communicated the false story to prosecutors, who charged Plaintiff with possession of a controlled substance. *Id.* ¶¶ 25, 27. Plaintiff does not allege that any prosecutors knew that Leano, Nichols, and Watts fabricated the evidence.

Though innocent, Plaintiff pled guilty in exchange for a two-year prison sentence because he felt that he could not prove that the officers fabricated evidence. *Id.* ¶¶ 28–29. Plaintiff was continuously in custody from his arrest on July 17, 2009, until his release from the Illinois Department of Corrections on January 15, 2010. *Id.* ¶ 31.

Nearly eight years after Plaintiff's arrest, the Cook County Circuit Court set aside his conviction on July 10, 2017, and the State of Illinois formally abandoned any prosecution. *Id.* ¶ 33. Two days later, Plaintiff filed this complaint. *Id.*

A. **The Watts Gang**

Dating to at least 2004, Watts and other officers systematically victimized individuals living at the Ida B. Wells Homes by, among other things, robbing them,

planting evidence on them, and manufacturing false charges against them. *Id.* ¶¶ 2, 43, 46. CPD's Internal Affairs Division had received numerous complaints against the so-called Watts Gang at the time of Plaintiff's arrest, as had Defendant Superintendent Phillip Cline and Defendant Debra Kirby, Assistant Deputy Superintendent and acting Head of Internal Affairs. *Id.* ¶ 44. At the time of Plaintiff's 2009 arrest, Internal Affairs had received at least ten formal complaints of official misconduct each for Watts, Nichols, and Leano (including a complaint that Plaintiff's sister made after his arrest). *Id.* ¶¶ 34, 54.

Plaintiff alleges that CPD had a policy or custom of "failing to discipline, supervise, and control its officers." *Id.* ¶ 51. Entities ranging from the City's Police Accountability Task Force to the United States Department of Justice have stated that CPD maintained a "code of silence" under which officers remained silent about other officers' misconduct and punished those who broke the code. *Id.* ¶¶ 56, 58, 70—72. Plaintiff also alleges that relevant policymakers for the City knew about CPD's code of silence, failed to discipline officers who abused their power, and took no action to fix the problems. *Id.* ¶ 53.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so Defendants have "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain

"sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.   Analysis

Plaintiff asserts Fourth and Fourteenth Amendment claims against individual Defendants, and also asserts a *Monell* claim and a state-law malicious-prosecution claim against the City. This Court first addresses the claims against Leano, Nichols, and Watts (the Officer Defendants); then the claims against Cline and Kirby (the Supervisory Defendants); and finally, the claims against the City.

### A.   The Officer Defendants

Plaintiff claims that the Officer Defendants violated his Fourth Amendment rights by arresting him without legal cause and knowingly providing fabricated evidence to prosecutors, and his Fourteenth Amendment due-process rights by

fabricating evidence and failing to disclose the fabrication to prosecutors. *See generally* [1]. This Court addresses each claim in turn.

### 1. Fourth Amendment Claim

Plaintiff alleges that Nichols and Leano violated his Fourth Amendment rights by arresting him without probable cause and knowingly communicating false information to prosecutors that led to a criminal prosecution against him. *Id.* ¶¶ 17, 25. Defendants argue that Plaintiff's Fourth Amendment claim, though otherwise actionable, is time-barred because it accrued in 2009 (either at the time of his arrest or when his pretrial detention terminated), not in 2017 when the Cook County Circuit Court reversed his conviction. [30] at 10–12. The circumstances of Plaintiff's claim raise a complex accrual question that the Supreme Court declined to answer in *Manuel v. City of Joliet*, 137 S. Ct. 911, 922 (2017) (remanding the accrual question to the Seventh Circuit), and that the Seventh Circuit has not yet decided on remand. The legal theory underlying the *Manuel* decision, however, requires this Court to conclude that Plaintiff's claim did not accrue until the date his conviction was set aside. Thus, as explained below, he states a plausible Fourth Amendment claim.

Section 1983 provides a mechanism for vindicating federal rights, but does not create any substantive rights. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Instead, courts must "identify the specific constitutional right" at issue in claims under § 1983. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The common law of torts provides a guide for defining "the contours and prerequisites of a § 1983

claim." *Manuel*, 137 S. Ct. at 920–21. After determining the right that a plaintiff asserts, "courts must still determine the elements of, and rules associated with, an action seeking damages for a violation of that right." *Id.*

The Fourth Amendment prohibits government officials from detaining a person without probable cause, and continues to govern claims for unlawful pretrial detention even beyond the start of legal process. *Id.* at 918, 920 (citing *Albright*, 510 U.S. at 274). Because § 1983 does not contain a statute of limitations, the law of the state where the injury occurred determines the length of the statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276–80 (1985). In Illinois, the relevant period is two years. 735 ILCS 5/13-202. Thus, because Plaintiff filed this suit on July 12, 2017, his claim is untimely unless it accrued on or after July 12, 2015.

Plaintiff asserts that, after *Manuel*, "detention based on fabricated evidence results in a violation of the Fourth Amendment that continues through conviction (or acquittal)." [52] at 6. Plaintiff also relies upon *Heck v. Humphrey*, 512 U.S. 477 (1994), for support; *Heck* holds that Section 1983 claims for damages attributable to an unconstitutional conviction or sentence do not accrue until the conviction or sentence is invalidated. *Id.* at 489. In Plaintiff's view, *Heck* made his Fourth Amendment claim uncognizable under § 1983 until July 10, 2017, when the state court set aside his conviction. [52] at 7.

Defendants do not dispute that Nichols and Leano violated Plaintiff's rights. [30] at 1–2. Instead, they argue that *Wallace v. Kato*, 549 U.S. 384 (2007), "dooms" Plaintiff's claim because Plaintiff had no conviction (yet) during his pretrial

detention that would have triggered the *Heck* bar. [54] at 13–14. Defendants characterize Plaintiff's complaint as asserting a traditional false-arrest claim; such claims, they argue, accrue when "the claimant becomes detained pursuant to legal process." *Id.* (citing *Wallace*, 549 U.S. at 397). Thus, under Defendants' timeline, Plaintiff's claim accrued in 2009 and became time-barred in 2011. [30] at 12.

Based upon this Court's review, the facts supporting Plaintiff's Fourth Amendment claim closely resemble those in *Manuel*, where the plaintiff challenged his 48-day pretrial detention based upon false evidence. 137 S. Ct. at 916. In *Manuel*, after finding that the Seventh Circuit "wrongly held that Manuel lacked any Fourth Amendment claim once legal process began," the Supreme Court remanded the question of when Manuel's claim accrued (because the Seventh Circuit did not address the elements of this type of Fourth Amendment claim and thus never reached the accrual issue). *Id.* at 922. This Court must now define those missing elements.

### a) The Elements of Plaintiff's Fourth Amendment Claim

To begin, this Court must differentiate between analogous torts to determine which best encompasses the factual allegations supporting Plaintiff's Fourth Amendment claim. *See Wallace*, 549 U.S. at 388–90. Defendants argue that Plaintiff asserts the "same rights as those underlying claims for false arrest." [30] at 11. Even though Defendants correctly note that *Heck* does not equitably toll the statute of limitations for false-arrest claims, *see Wallace*, 549 U.S. at 395–96, an examination of the relevant torts and the allegations of Plaintiff's complaint suggests that malicious prosecution provides the closest analog for his claim, *see* [1].

To state a false-arrest claim under Illinois law, Plaintiff would have to show that: (1) the defendants restrained or arrested him; and (2) the defendants acted without probable cause or other reasonable grounds to make the arrest. *Jones-Huff v. Hill*, 208 F. Supp. 3d 912, 922 (N.D. Ill. 2016). False arrest claims accrue immediately upon the start of legal process and cover the time of detention "up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim." *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016); see also *Wallace*, 549 U.S. at 390.[1]

To state a malicious-prosecution claim under Illinois law, on the other hand, Plaintiff would have to show that: (1) the defendants commenced or continued an original judicial proceeding against him; (2) the proceeding terminated in Plaintiff's favor; (3) the defendants lacked probable cause for the proceeding; (4) the defendants acted with malice; and (5) Plaintiff suffered damages as a result. *See, e.g.*, *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010); *Grundhoefer v. Sorin*, 20 N.E.3d 775, 780 (Ill. App. Ct. 2014). These elements neatly mirror Plaintiff's allegations.

Outside the Seventh Circuit, most Circuits recognize Fourth Amendment malicious-prosecution claims with the following elements: (1) the defendants initiated a criminal proceeding against the plaintiff; (2) the criminal proceeding

---

[1] *Wallace* declined to address whether Fourth Amendment malicious-prosecution claims are ever cognizable under § 1983. 549 U.S. at 390 n.2 (assuming, without deciding, that such claims are cognizable). *Albright*'s plurality also declined to expressly answer the question, though Justice Ginsburg wrote in concurrence that pending criminal proceedings—when initiated because of an arresting officer's "deliberately misleading" actions—render a person "effectively 'seized' for trial," thus creating a cognizable Fourth Amendment claim for malicious prosecution. 510 U.S. at 276–81.

ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty beyond the initial seizure. *See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010); *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009); *Wilkins v. De-Reyes*, 528 F.3d 790, 797–99 (10th Cir. 2008); *Pitt v. D.C.*, 491 F.3d 494, 510–511 (D.C. Cir. 2007); *Castellano v. Fragozo*, 352 F.3d 939, 953–54, 959–60 (5th Cir. 2003) (en banc); *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002); *Lambert v. Williams*, 223 F.3d 257, 260–62 (4th Cir. 2000); *Whiting v. Traylor*, 85 F.3d 581, 584–86 (11th Cir. 1996); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117–18 (2d Cir. 1995). Significantly, the favorable-termination element means that Plaintiff's claim would be timely "in the great majority of Circuits." *Manuel*, 137 S. Ct. at 921. And those Circuits permit Fourth Amendment malicious-prosecution claims "regardless of what alternative remedy a state provides." *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013) (collecting cases).

In contrast to its sister Circuits, the Seventh Circuit (before the Supreme Court's decision in *Manuel*) took a different approach to constitutional claims for malicious prosecution. *See, e.g.*, *Welton v. Anderson*, 770 F.3d 670, 673–75 (7th Cir. 2014) (stating that Justice Ginsburg's *Albright* concurrence "is not law this circuit is required to follow" and, regardless, that the facts of the case did not establish a "continuing seizure" under her approach); *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (rejecting a Fourth Amendment malicious-prosecution claim

because "the Fourth Amendment drops out of the picture following a person's initial appearance in court"); *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001) (holding that federal claims of malicious prosecution depend upon the right to due process, not the Fourth Amendment, and thus rejecting "any constitutional tort of malicious prosecution when state courts are open"); *Reed v. Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) (articulating the standards for a federal malicious-prosecution claim but explaining that the plaintiff's claim was really one for false arrest).

Here, Plaintiff's complaint does not specify under which tort he seeks damages. *See generally* [1]. Rather, Plaintiff broadly alleges a violation of his Fourth Amendment rights. *See, e.g., id.* ¶¶ 75–76. The failure to name a specific legal theory does not defeat Plaintiff's claim, however, because his factual allegations have "identified the constitutional right at issue." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018).

Consistent with the malicious-prosecution framework that other Circuits use (taking the elements out of order), Plaintiff claims that Leano and Nichols violated his Fourth Amendment rights because: (1) Plaintiff suffered a deprivation of his liberty beginning July 17, 2009, [1] ¶¶ 16–21; (2) Defendants acted maliciously by falsifying police reports, knowing that those reports would result in Plaintiff's criminal prosecution, *id.* ¶¶ 21–26; (3) Defendants communicated the false reports to unknowing prosecutors, thereby initiating a criminal proceeding against Plaintiff, *id.*; (4) Defendants initiated the proceeding without probable cause, *id.*; and (5) the criminal proceeding was set aside in Plaintiff's favor on July 10, 2017,

*id.* ¶ 33. Thus, in almost every other Circuit, Plaintiff would have stated a viable Fourth Amendment malicious-prosecution claim. *See Manuel*, 137 S. Ct. at 921.

At present, this Court does not have the benefit of the Seventh Circuit's decision on *Manuel*'s remanded accrual question. But the Supreme Court's holding in *Manuel* that the Fourth Amendment governs claims for unlawful pretrial detention even after the start of legal process, *id.* at 920, undermines the position that "the Fourth Amendment drops out of the picture following a person's initial appearance in court," *Bielanski*, 550 F.3d at 642. Consistent with the precedent in eight Circuits allowing Fourth Amendment malicious-prosecution claims, the Supreme Court's *Manuel* decision requires this Court to allow Plaintiff's claim to proceed, absent a new contrary opinion by the Seventh Circuit. Thus, this Court denies Defendants' motion to dismiss Plaintiff's Fourth Amendment claims against Nichols and Leano.

## 2. Fourteenth Amendment Due-Process Claim

Plaintiff alleges that the Officer Defendants violated his Fourteenth Amendment due-process rights by fabricating evidence (and in Watts' case, by knowingly approving fabricated police reports) that led to his conviction and by failing to disclose the fabrication to prosecutors. [1] ¶¶ 24–31. Defendants argue that Plaintiff's guilty plea defeats his due-process claim because the plea broke the causal chain between the Officer Defendants' bad acts and his conviction. [30] at 7. Fabricated evidence, Defendants say, supports a procedural due-process claim only if that evidence is admitted at trial and causes the plaintiff's conviction. *Id.* As set

forth below, this Court finds that Plaintiff states a plausible Fourteenth Amendment claim against the Officer Defendants, at this stage in the case.

Criminal defendants have the right to receive known exculpatory or impeachment evidence from the prosecution before trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Although *Brady* originally focused on prosecutors, the Supreme Court has since extended *Brady*'s duty to disclose to law enforcement officers. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016) ("A corollary of the prosecution's duty to disclose to the defense is that the police must disclose exculpatory evidence to the prosecutors"). To state a *Brady* claim, a plaintiff must also show that the favorable evidence is material, meaning that the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence" in the outcome of the proceeding. *Saunders–El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2016) (quoting *Kyles*, 514 U.S. at 435).

The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence" later deprives the defendant of liberty in some way. *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). Indeed, convictions premised on deliberately falsified evidence "always violate the defendant's right to due process." *Avery*, 847 F.3d at 439. Moreover, the fact that a plaintiff possesses a state-law remedy for malicious prosecution "doesn't defeat a federal due-process claim against an officer

who fabricates evidence" that later facilitates a wrongful conviction. *Id.* at 441 (citing *Armstrong v. Daily*, 786 F.3d 529, 539–41 (7th Cir. 2015)).

Here, Plaintiff alleges that the Officer Defendants led prosecutors to charge him and pursue a criminal case against him based entirely upon their knowingly false police reports. [1] ¶¶ 25–26. He also alleges that the Officer Defendants never disclosed to prosecutors that they fabricated the police reports. *Id.* The fabrication, if disclosed, would have demonstrated Plaintiff's factual innocence, thus putting "the whole case in such a different light as to undermine confidence" in the proceeding against him. *Saunders–El*, 778 F.3d at 561 (quoting *Kyles*, 514 U.S. at 435). That said, this Court must now address Defendants' contention that Plaintiff's guilty plea forecloses any *Brady* claim.

### a) Plaintiff's Right to Pre-Plea Exculpatory Evidence

Defendants say that Plaintiff has no constitutional right to a pre-plea disclosure of exculpatory evidence. [54] at 9–11. This Court disagrees, and finds that *Brady* and its progeny require the prosecution team to disclose known (and material) exculpatory evidence before a criminal defendant pleads guilty.

Generally, when a criminal defendant voluntarily pleads guilty, he forgoes not only a fair trial, but also some accompanying constitutional guarantees. *United States v. Ruiz*, 536 U.S. 622, 628–29 (2002). For example, the Constitution does not require the prosecution to disclose material *impeachment* evidence that it knows about prior to a guilty plea. *Id.* But that rule likely does not apply to the disclosure of material *exculpatory* evidence that the prosecution knows about before a guilty

13

plea. As the Seventh Circuit explained in *McCann v. Mangliardi*, 337 F.3d 782, 788

(7th Cir. 2003), a "significant distinction" exists between impeachment and

exculpatory evidence:

> In holding that the Due Process Clause does not require the
> government to disclose impeachment information prior to the entry of
> a criminal defendant's guilty plea, the Court in *Ruiz* reasoned that it
> was "particularly difficult to characterize impeachment information as
> critical information of which the defendant *must always be aware prior
> to pleading guilty* . . . ." The Court also noted that "the proposed plea
> agreement at issue . . . specifies the Government will provide 'any
> information establishing the factual innocence of the defendant,'" and
> "that fact, along with other guilty-plea safeguards . . . diminishes the
> force of defendant's concern that, in the absence of the impeachment
> information, innocent individuals accused of crimes will plead guilty."
> Thus, *Ruiz* indicates a significant distinction between impeachment
> information and exculpatory evidence of actual innocence.

*Id.* at 787–88 (citations omitted) (quoting *Ruiz*, 536 U.S. at 629–31). Granted, *Ruiz*

did not face the exact question presented here of whether the prosecution must

disclose known exculpatory evidence before a defendant pleads guilty. *Ruiz*, 536

U.S. at 630. Neither did *McCann*, because the plaintiff in that case did not present

evidence that the defendants knew about the material exculpatory evidence before

he pled guilty. *McCann*, 337 F.3d at 788. Nevertheless, in light of *Ruiz* and

*McCann*, traditional *Brady* obligations ostensibly require the pre-plea disclosure of

any known exculpatory evidence if it is material.

As noted in *McCann*, even though the Supreme Court has not squarely

addressed whether due process requires the disclosure of such exculpatory

information outside the context of a trial, "it is highly likely that the Supreme Court

would find a violation of the Due Process Clause if prosecutors or other relevant

government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *McCann v. Mangliardi*, 337 F.3d 782, 788 (7th Cir. 2003).

Other courts, both in this district and in other Circuits, see the landscape in a similar fashion, holding under *Brady* that the prosecution team must disclose all known material exculpatory evidence before a criminal defendant pleads guilty. *See Garcia v. Hudak*, 156 F. Supp. 3d 907, 916 (N.D. Ill. 2016) (holding that "the State has a constitutional duty to disclose material exculpatory evidence to a criminal defendant before the defendant pleads guilty"); *Ollins v. O'Brien*, No. 03-cv-5795, 2005 WL 730987, at *11 (N.D. Ill. Mar. 28, 2005) (holding that "due process requires the disclosure of information of factual innocence during the plea bargaining process"); *United States v. Dahl*, 597 F. App'x 489, 490 (10th Cir. 2015) (holding that the government's duty to disclose "in the context of a guilty plea extends only to material exculpatory evidence"); *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (concluding that *Brady* governs due-process claims brought by individuals who pled guilty "without knowledge of material evidence withheld by the prosecution"); *but see United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (holding that "a guilty plea precludes the defendant from asserting a *Brady* violation").

### b) Plaintiff's Guilty Plea and Potential Waiver

Defendants further argue that even if the Officer Defendants violated Plaintiff's due-process rights, Plaintiff's guilty plea (presumably executed with the

advice and assistance of defense counsel) broke the causal chain of events and waived his constitutional trial rights and associated due-process claims. [30] at 7; [54] at 9–10. With some important exceptions, a guilty plea executed with the benefit of counsel usually "operates as a waiver of all formal defects" in the proceedings (even constitutional defects). *United States v. Lockett*, 859 F.3d 425, 427 (7th Cir. 2017). Plea agreements also typically constitute enforceable contracts, and no "general constitutional-argument exception" exists for waivers in plea agreements. *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (internal quotation marks omitted).[2] Despite his actual knowledge of the undisclosed exculpatory evidence, Plaintiff says that he only pled guilty here because he believed that his own testimony or evidence would not have persuaded a jury over the fabricated evidence of the Officer Defendants. *See* [1] ¶¶ 28–29.

As such, Plaintiff's case resembles the situation in *Saunders v. City of Chicago*, No. 12-cv-09158, 2014 WL 3535723, at *5 (N.D. Ill. July 11, 2014) (Dow, J.). In *Saunders*, one of the plaintiffs pled guilty to rape and murder, even though he maintained his innocence and knew that police fabricated the evidence against him and his co-defendants. *Id.* at *1. On a motion to dismiss, the *Saunders* court allowed that plaintiff's *Brady* claim to proceed:

> Indeed, here, Thames made the decision to plead guilty with the benefit of having seen the power of the inculpatory evidence at the

---

[2]Clearly, when Plaintiff chose to plead guilty in this case, he knew that the Officer Defendants had fabricated the evidence against him, *See* [1] ¶¶ 28–29. Nevertheless, in certain circumstances, federal courts can refuse to enforce a knowing waiver contained within a guilty plea if enforcing it would result in a "miscarriage of justice." *United States v. Litos*, 847 F.3d 906, 910 (7th Cir. 2017) (collecting cases). Given the incomplete factual record here, however, whether Plaintiff's case falls within this waiver exception remains to be seen.

government's disposal; in spite of the falsity of the confessions, police report, and physical evidence against them, Saunders and Richardson were convicted at trial and sentenced to 40 years in prison. Assessing his chances with those results in mind, Thames opted to plead guilty and received a 30-year sentence . . . . it reasonably can be said that the fabricated evidence caused Plaintiff's deprivation of his liberty.

*Id.* at *5. Likewise, the court in *Garcia* allowed the plaintiff's *Brady* claim to survive a motion to dismiss even though the plaintiff knew, when he pled guilty, that police officers planted drugs on him during his arrest, fabricated police reports saying that he possessed drugs, and testified to the same effect at his pretrial hearings. 156 F. Supp. 3d at 910 (Norgle, J.). There, the court reasoned that the plaintiff lacked the evidence necessary to exculpate himself because the police officers "suppressed their illegal activities." *Id.* at 917.

Given the similar posture here, this Court also allows Plaintiff's *Brady* claim to survive at this point in the proceedings.[3]

### B.     Supervisory Defendants

Under Section 1983, plaintiffs may not hold a supervisory official vicariously liable for a subordinate's constitutional misconduct; they must show that the supervisor had personal responsibility for the constitutional deprivation. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). Thus, supervisory officials face liability under § 1983 only if they had "personal involvement in the

---

[3] Both *Saunders* and *Garcia* considered motions to dismiss without the benefit of a full factual record, and unsurprisingly, neither decision addressed the question of waiver. Likewise, without a more robust factual record and focused briefing by the parties, this Court cannot determine whether Plaintiff's knowing and voluntary guilty plea constitutes an effective waiver of his due-process claim. For example, was there a written plea agreement? When the judge accepted his guilty plea, did Plaintiff swear under oath and confirm the facts underlying the government's case establishing his guilt? Did his plea specifically address and waive trial rights, including discovery issues? Many questions remain unanswered.

constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* at 614–15. Supervisory officials who merely act negligently in failing to detect and prevent a subordinate's misconduct do not qualify as "personally involved" for the purposes of § 1983. *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). On the other hand, supervisory officials who act (or fail to act) in deliberate or reckless disregard of a plaintiff's constitutional rights satisfy § 1983's requirements for personal responsibility. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Here, Plaintiff claims that Cline and Kirby knew, at the time of his arrest, that Watts and his co-Defendants engaged in, among other things, "fabricating evidence and manufacturing false charges against persons at the Ida B. Wells Homes" because of civilian complaints they had previously received about those officers. [1] ¶ 42. Although Cline and Kirby possessed the power, and presumably the opportunity, to prevent the Officer Defendants from continuing to engage in this wrongdoing, they allegedly "chose to turn a blind eye" to it, resulting in foreseeable violations of Plaintiff's Fourth and Fourteenth Amendment rights. *Id.* ¶¶ 45, 47–49.

Defendants argue that Plaintiff fails to satisfy Rule 8 because he offers only "formulaic recitation of the elements of a cause of action" lacking any factual support. [30] at 12. Alternatively, Defendants argue that Cline and Kirby exhibited, at worst, mere negligence in their failure to act. *Id.*

This Court disagrees. Plaintiff alleges that Cline and Kirby knew of the Officer Defendants' grave misconduct and knew that the misconduct would likely

continue, yet deliberately did nothing (in their capacity as supervisors) to correct the problem. [1] ¶¶ 42–48. Plaintiff neither claims a "constitutional right to an internal investigation," [30] at 16, nor states a theory of vicarious liability. Rather, Plaintiff says that Cline and Kirby deliberately disregarded his constitutional rights by failing to stop the Officer Defendants from continuing their illegal scheme of, among other things, fabricating evidence against residents of the Ida B. Wells Homes. [1] ¶ 42. At this early stage, those allegations suffice to state a claim against Cline and Kirby. *See Miller*, 220 F.3d at 495. While such claims may or may not survive summary judgment, this Court denies Defendants' motion to dismiss claims against Cline and Kirby.

## C. The City

Finally, Plaintiff alleges that the City's official policies and customs—particularly CPD's "code of silence"—directly caused the deprivation of his Fourth and Fourteenth Amendment rights. [1] ¶¶ 51—60, 76. He also asserts a state-law malicious prosecution claim against the City.

### 1. Monell Claim

Municipalities face liability under § 1983 when they have policies, laws, regulations, or customs that rise to the level of constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability for a constitutional injury under *Monell* "requires a finding that the individual officer is liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000).

According to Plaintiff, the "code of silence" permeated throughout CPD,

enabling "the individual officer defendants to engage in egregious misconduct for many years." [1] ¶¶ 56, 58. Plaintiff specifically alleges that the "code of silence" was not just an unspoken rule, but part of the customary course of instruction at the Chicago Police Academy. *Id.* ¶ 57. Based upon those allegations, Plaintiff sufficiently pleads that the City has a policy or custom that violates the Constitution. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (inadequate police training provides the basis for § 1983 liability when the failure to train amounts to deliberate indifference to the rights of people with whom the police come into contact); *cf. Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) (officer's use of excessive force in violation of county policy did not attach liability under *Monell*). Here, the individual officers remain potentially liable on the underlying claims, so this Court denies Defendants' motion to dismiss the *Monell* claim against the City at this stage.

### 2. Malicious-Prosecution Claim

Plaintiff asserts an Illinois-law malicious-prosecution claim against the City under a vicarious liability theory. [52] at 6. In Illinois, an employer's vicarious liability extends to "the negligent, willful, malicious, or even criminal acts of its employees" when they commit such acts "within the scope of the employment." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007).

As this Court discussed above, the elements of a malicious-prosecution claim under Illinois law are functionally identical to the elements of a Fourth Amendment malicious-prosecution claim. *Compare Hurlbert*, 938 N.E.2d at 512, *with Sykes*, 625

F.3d at 308–09. So, because Plaintiff alleges a sufficient Fourth Amendment malicious-prosecution claim against the Officer Defendants, he also states a malicious-prosecution claim under Illinois law. Defendants make no argument that the Officer Defendants committed their misconduct outside the scope of their employment for CPD. Because the Officer Defendants remain potentially liable for the underlying misconduct, this Court denies Defendants' motion to dismiss the malicious-prosecution claim against the City.

### 3. Indemnity Claims

Any indemnity claims against the City remain viable because the individual officers remain potentially liable on the underlying claims. *See Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) (citing 745 ILCS 10/2-109).

## IV. Conclusion

This Court denies Defendants' motion to dismiss [30]. The status hearing set for March 22, 2018 at 9:45 a.m. in Courtroom 1203 stands. The parties shall come prepared to set case management dates.

Dated: March 8, 2018

Entered:

John Robert Blakey
United States District Judge